UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

ROBERT AND CAROL SUTER

VERSUS

ALLSTATE INDEMNITY COMPANY

CIVIL ACTION

NO. 09-817-JJB

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendant's Motion (doc. 19) for Summary Judgment. Plaintiff has filed an opposition (doc. 24) to which Defendant has filed a reply (doc. 25). There is no need for oral argument. This Court's jurisdiction exists pursuant to 28 U.S.C. § 1332. For the reasons stated herein, the Court GRANTS Defendant's motion, in part, and DENIES Defendant's motion, in part.

## Factual Background

### I. Facts

The following facts are undisputed. In September 2008, during Hurricane Gustav, Plaintiffs Robert and Carol Suter's home suffered damage when a tree fell and struck its north section (doc. 24, ex. B). The tree left a large hole in the roof, which allowed wind and water to enter the home, causing damage to its structure and foundation (*Id.*).

The Suter's home was insured by Defendant Allstate Indemnity Co. ("Allstate") under a Deluxe Homeowners policy ("the Policy") which covered the

1

Suter's dwelling and other structures, personal property, and additional living expenses ("ALE") (doc. 24). The Policy contains the following provisions with regards to the Suter's dwelling and other structures: (1) a provision stating that the insured's loss will be measured by and limited to the actual cash value ("ACV") of the loss—cost of repair, less depreciation, rather than replacement cost value ("RCV")—in the event that the insured does not actually repair the property; and (2) a provision stating that, in the event of a "total loss," Allstate will pay the insured the Policy's limit.[1] The Policy also contains the following provisions with regards to the Suter's personal property: (1) that any properly submitted claims for personal property damage will be measured by and limited to the ACV of the loss;[2] and (2) a provision limiting reimbursement to the amount

---

[1] Allstate's policy provides:

> 5. How We Pay for a Loss
>
> Under Coverage A – Dwelling Protection, payment for a covered loss will be by one or more of the following methods. . . .
>
> b) Actual Cash Value. *If you do not repair or replace the damaged, destroyed or stolen property, payment will be made on an actual cash value basis.* This means that there may be a deduction for depreciation. Payment will not exceed the limit of liability shown on the Policy Declarations for the coverage that applies to the damaged, destroyed or stolen property, regardless of the number of items involved. . . .
>
> e) *In the event of the total loss of your dwelling* under Coverage A – Dwelling Protection, *we will pay the limit of Liability shown on the Policy Declaration for Coverage A – Dwelling Protection.*

(doc. 19, ex. A) (emphasis added).
[2] Allstate's policy provides:

> How We Settle a Loss
>
> (a) The value of the covered property will be determined at the time of the loss; and

2

actually spent to repair or replace the damaged personal property.[3] The policy limits for the different categories of coverage are as follows: $169,000 for Dwelling, $16,900 for Other Structures, $118,300 for Personal Property, and Additional Living Expenses ("ALE") for "up to 12 months" (doc. 19, ex. A).

In September 2008, structural engineers hired by Allstate visited the Suter's home, determined that the damage did not compromise the structural integrity of the entire hom, but only its northeast portion, and suggested the damaged portion be repaired (doc. 19, ex. D). In October 2008, Allstate's adjuster, Alexander Wyper calculated the Suters' damages to the dwelling and other structures to be $111,053.02, and, in total, Allstate paid the Suters $121,943.63 under the dwelling coverage (doc. 19, ex. E). In addition, in October 2008, another Allstate adjuster, Jason Desroches, visited the home to calculate the Suter's personal property losses (doc. 19, ex. C). In total, Allstate paid the Suters $16,379.71 under their personal property coverage (doc. 19, ex. L). Lastly, Allstate has paid the Suters $43,726.36 in ALE for a mobile home in which Plaintiffs lived from November 2008 until March 2010 (doc. 19, ex. E). However, the Suters did not repair or replace the insured property, as the

---

(b) Loss or damage to covered personal property will be settled on an actual cash value basis. This means that there may be a deduction for depreciation. Payment will not exceed the amount necessary to repair or replace the damaged item(s) with property of like kind and quality, or the amount of insurance, whichever is less.

(doc. 19, ex. A).
[3] Section I Conditions, 5(d) states that "Personal Property Reimbursement payment will not exceed the smallest of the following amounts: . . . (1) the amount actually and necessarily spent to repair or replace the property with similar property of like kind and quality" (doc. 19, ex. A).

3

payments were instead put in escrow to satisfy their mortgage payments (doc. 19, ex. G).

Plaintiffs, believing that Allstate's adjustors' calculations were improperly low, hired Sonnier & Fisher Public Adjusters, LLC ("Sonnier"), to provide an estimate of their damages (doc. 1, ex. D). On February 11, 2009, Sonnier concluded that the damages to Plaintiffs' home were $164,381.42 (doc. 1, ex. D). On August 3, 2009, Plaintiffs demanded that Defendant pay $193,146.98 to cover the damage to their home, and other damages including ALE and a wage loss claim by Carol Suter (doc. 1, ex. D).

## II. Procedu ral History

On August 26, 2009, Plaintiffs filed suit against Defendant (doc. 1). Plaintiffs assert that (1) Defendant made insufficient payments to Plaintiffs under the Dwelling provisions of the Policy; (2) Defendant made insufficient payments to Plaintiffs under the Personal Property provisions of the Policy; (3) Defendant made insufficient payments to Plaintiffs under the ALE provisions of the Policy; (4) Defendant acted arbitrarily and capriciously in calculating and indemnifying Plaintiffs' losses, entitling Plaintiffs to statutory penalties; (5) Defendant's failure to properly adjust the ALE portion of Plaintiffs' claim resulted in Plaintiffs suffering emotional distress/mental anguish; and (6) Defendant's refusal to honor the Policy resulted in Carol Suter's loss of wages (doc. 1).

On January 3, 2011, Defendant filed its Motion (doc. 19) for Summary Judgment. Defendant asserts that (1) Plaintiffs have exhausted their Dwelling

4

coverage and ALE coverage; (2) Plaintiffs are only entitled to ACV of the damages to their dwelling and personal property; (3) Plaintiffs cannot offer any evidence demonstrating that Defendant acted arbitrarily and capriciously; (4) Plaintiffs may not maintain a claim for emotional distress/anguish based on the breach of a contract for insurance; and (5) the Policy does not cover wage losses and Defendant did not violate any statutes under which Plaintiff would be entitled to consequential damages, such as lost wages (doc. 19).

On February 3, 2011, Plaintiff filed its Opposition (doc. 24) to Defendant's Motion for Summary Judgment. Plaintiffs assert that (1) their home was rendered a "total loss" and they are therefore entitled to the Policy limit; (2) Defendant's actions in extending ALE coverage caused Plaintiffs emotional distress/anguish; (3) Defendant refused to pay or underpaid Plaintiffs' personal property claims; (4) whether Defendant acted in arbitrarily and capriciously is a question of fact which precludes summary judgment; (5) Plaintiffs may maintain a claim for emotional distress/anguish based upon the Defendant's breach of an insurance contract; and (6) whether Plaintiffs' wage loss claim requires a finding of bad faith is a question of fact which precludes summary judgment (doc. 24).

## Standard of Review

A motion for summary judgment should be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P.

56(c). The movant has the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *see also Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). If the moving party meets its *prima facie* burden, then the burden going forward shifts to the non-moving party to show, by affidavit or otherwise, that a genuine dispute of material fact remains for the factfinder to resolve. *Celotex*, 477 U.S. at 321-25. The party opposing summary judgment, in order to survive the motion, is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

## Discussion

### I. Dwelling claim

Defendant asserts that Plaintiffs are only entitled to ACV of their loss because they did not repair their home, pursuant to subsection 5(b) of the Policy and Louisiana law (doc. 19). Defendant also asserts that Plaintiffs have been fully compensated based on Plaintiffs' adjuster's repair/replacement estimate and Defendant's adjuster's depreciation estimate (doc. 19).

Plaintiffs assert that their home was rendered a "total loss," and that they are entitled to the maximum amount of the Policy pursuant to subsection 5(e) (doc. 24). Plaintiffs also assert that Defendant breached the Policy by

underpaying their claim, thereby preventing them from fulfilling their obligation to repair or replace the home (doc. 24).

In reply, Defendant asserts that Plaintiffs have provided insufficient evidence to survive its motion for summary judgment because their structural engineer, Charles Norman, provided no underlying data to support his conclusion that Plaintiffs' home was rendered a total loss (doc. 25). Defendant also asserts that even if it did breach its contract by underpaying Plaintiffs' claim, (1) Plaintiffs were aware that their mortgage company would release the escrowed funds so that Plaintiffs could repair their home; (2) at the time Plaintiffs refused to repair the home they were not aware that Defendant's payment was insufficient, because Plaintiffs had not yet secured an independent estimate of the damage; and (3) regardless of the sufficiency of Defendant's payment, Plaintiffs were required to make whatever repairs they could afford in order to mitigate Defendant's damages (doc. 25).

When sitting in diversity, a federal court applies the substantive law of the state in which it sits—here, Louisiana. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007). Under Louisiana law, an insurance policy "constitutes the law between the insured and the insurer, and the agreement governs the nature of the relationship." *Peterson v. Schimek*, 729 So. 2d 1024, 1028 (La. 1999).

Moreover, under Louisiana law, the purpose of an insurance policy is to indemnify the insured against loss, and to place the insured in the same position

in which he would be had the loss not occurred. *Berkshire Mut. Ins. Co. v. Moffett*, 378 F.2d 1007, 1011 (5th Cir. 1967). Under Louisiana law, an insured's "actual loss" may be measured in a number of ways including RCV or ACV. *Bradley v. Allstate Ins. Co.*, 620 F.3d 509, 522 (5th Cir. 2010). Generally speaking, an insured is entitled to RCV when the property represents a "total loss;" that is, when the cost of repairing the property exceeds its value. *Id.* at 519. When the cost of repair does not exceed the value of the damaged property, the insured is entitled to ACV, which is determined by the calculating the cost of duplicating the damaged property with materials of like kind and quality, and subtracting for physical deterioration. *Real Asset Mgmt. Inc. v. Lloyd's of London*, 61 F.3d 1223, 1228 n.7, 1230-31 (5th Cir. 1995).

In addition, Louisiana courts and federal courts applying Louisiana law have held that a genuine issue of material fact exists, precluding a grant of summary judgment if (1) the insured and the insurer contest the proper measure of actual loss; *Bradley*, 620 F.3d at 522; *Matthews v. Allstate Ins. Co.*, 731 F.Supp.2d 552, 561 (E.D. La. 2010) ("Whether the proper measure of damages is replacement value or actual cash value is a contested question which presents a genuine issue of material fact."); or (2) "an insurer and an insured dispute whether the insurer has paid only a portion of the cost necessary for repairs covered under the policy." *Matthews v. Allstate Ins. Co.*, 731 F.Supp.2d 552, 561 (E.D. La. 2010) ("There exists a genuine issue of material fact as to whether Allstate breached the contract by underpaying Plaintiffs' claim and thus

prevented Plaintiffs' from fulfilling their obligation to rebuild within two years in order to receive replacement value for their damages").

The Court finds that there exist genuine issues of material fact which make a grant of summary judgment inappropriate. Here, the Policy contains two provisions that potentially apply and which determine the damages to which Plaintiffs are entitled. Subsection 5(e) entitles Plaintiffs to the maximum amount of coverage available under the Policy in the event that the damage to their home represents a "total loss" (doc. 19, ex. A). Subsection 5(b) potentially entitles Plaintiffs to the ACV of their loss, but only insofar as Plaintiffs actually repaired or replaced the damaged property (doc. 19, A). Thus, in order to determine the amount to which Plaintiffs are entitled under the Policy, it is necessary to determine whether the damage to Plaintiffs' home represents a "total loss."

Plaintiffs' adjuster, Sonnier, determined that the cost to repair Plaintiffs' home would be in excess of $164,000 (doc. 24, ex. I). Plaintiffs' structural engineer, Charles Norman, after reviewing Sonnier's report, determined that Sonnier had failed to account for a number of necessary repairs and determined that Plaintiffs' home was a "constructive total loss" (doc 24, exs. C & H). Moreover, two of Defendant's adjusters determined that that the cost to repair the house would exceed the value of the Policy, while another adjuster determined that the cost to repair Plaintiffs' home would not exceed its value (doc. 25, ex. B). As such, Plaintiffs and Defendant contest the proper measure of the "actual loss" and so a genuine issue of material facts exists which precludes summary

judgment. *Bradley*, 620 F.3d at 522; *Matthews*, 731 F. Supp. 2d at 561. Moreover, summary judgment is inappropriate because Plaintiffs claim that Defendant paid only a portion of the cost necessary to repair their home, thereby depriving them of the opportunity to fulfill their obligation to repair or replace the damaged property. *Matthews*, 731 F. Supp. 2d at 561. Therefore, the Court will DENY Defendant's Motion (doc. 19) for Summary Judgment as to Plaintiffs' Dwelling coverage claim.

## II. A dditional Living Expenses claim

Defendant asserts that it satisfied its obligations under the Policy by providing Plaintiffs with ALE in excess of the twelve-month maximum set in the Policy (doc. 19). Plaintiffs concede that Defendant provided them with ALE for over twelve months (doc. 24). However, Plaintiffs assert that (1) the owner of the mobile home in which they lived continuously inquired whether Defendant would continue to pay for it; and (2) they experienced difficulty in finding living arrangements that would have allowed them to remain near their show dogs, and that this caused them emotional "distress and anguish" (doc. 24).

An insurance policy "constitutes the law between the insured and the insurer, and the agreement governs the nature of the relationship." *Peterson*, 729 So. 2d at 1028. In order for a plaintiff to recover from a defendant for the defendant's alleged failure to fulfill an obligation, the plaintiff must point to a specific provision within the parties' contract setting out the obligation. *Favrot v. Favrot*, 2011 WL 458708, at *7 (La. Ct. App. 4th Feb. 9, 2011).

The Court finds that there are no genuine issues of material fact. It is undisputed that Allstate provided Plaintiffs with ALE expenses for the twelve-month maximum set in the Policy—from November 2008 until March 2010, Defendant paid $43,726 for Plaintiffs' mobile home (doc. 19, ex. E, pp. 3-14). Although Plaintiffs claim that they experienced emotional "distress and anguish" during the process of receiving their ALE funds, such allegations are unsupported by evidence and indistinguishable from Plaintiffs' separate emotional distress claim.

The Court also finds that Defendant is entitled to judgment as a matter of law. Under Louisiana law, the contract between an insurer and an insured determines the parties' obligations, *Peterson*, 729 So. 2d at 1028, and to recover, a plaintiff insured must point to some specific obligation which the defendant insurer failed to fulfill. *Favrot*, 2011 WL 458708, at *7. Here, Plaintiffs can point to no ALE provision in the Policy which Defendant failed to fulfill. Therefore, the Court will GRANT Defendant's (doc. 19) for Summary Judgment as to Plaintiffs' ALE claim.

### III. Personal Property claim

Plaintiffs assert that Defendant (1) completely failed to compensate them for jewelry and paintings that were lost or damaged during the storm; and (2) inadequately compensated them for furniture that was damaged during the storm (doc. 24). Plaintiffs also assert that Defendant applied an unreasonably high

depreciation coefficient—approximately 68%—to determine Plaintiff's actual losses (doc. 24).

Defendant asserts that it has satisfied its obligations under the Personal Property provisions of the Policy (doc. 19). Defendant asserts that (1) it paid ACV for each of Plaintiffs' properly documented and submitted claims, as required by the Policy; (2) Plaintiffs failed to provide the necessary documentation for their remaining claims (doc. 19). As such, Defendant asserts that Plaintiffs have failed to submit competent summary judgment evidence that the personal property coverage they received was insufficient as per the terms of the Policy (doc. 24).

A plaintiff insured must provide a defendant insurer with appropriate documentation that substantiates plaintiff's loss in order to survive a motion for summary judgment. *Williams v. Allstate Indem. Co.*, 359 F. App'x 471, 473-75 (5th Cir. 2009).

The Court finds that there are no genuine issues of material fact. Plaintiffs purchased a replacement set of furniture for $3,352.57, and in accordance with the terms of the parties' contract, Defendant reimbursed Plaintiffs for the purchase (doc. 19, ex. A). In addition, Plaintiff submitted a list of the items they believed were lost or damaged to Defendant, and thereafter Defendant requested additional proof of the lost jewelry and paintings, which Plaintiffs failed to do (doc. 19, ex. C). Finally, Plaintiffs have failed to submit any evidence

demonstrating that Defendant's used an unreasonably high depreciation coefficient in determining the ACV of their losses.

The Court also finds that Defendant is entitled to judgment as a matter of law. Plaintiffs failed to provide Defendant with the proof of loss necessary to trigger Defendant's obligation to compensate Plaintiffs for the loss of their jewelry and paintings. *Williams*, 359 F. App'x at 473-75. Moreover, Plaintiffs have failed to point to a specific contractual provision which Defendant violated with regards to the replacement furniture, as is required to maintain a claim. *Favrot*, 2011 WL 458708, at *7. Finally, because Plaintiffs failed to provide any evidence supporting their contention that Defendants used an unreasonably high depreciation coefficient, they cannot survive a motion for summary judgment. *Ragas*, 136 F.3d at 458. Therefore, the Court will GRANT Defendant's (doc. 19) for Summary Judgment as to Plaintiffs' Personal Property claim.

### IV. Statutory Penalty Claim

Plaintiffs assert that Defendant denied their claims in bad faith in violation of Louisiana Revised Statutes sections 22:1892 and 22:1973 (doc. 1). Defendant asserts that Plaintiffs cannot prevail on their bad faith claims because (1) Plaintiffs cannot establish a valid underlying contract claim; and (2) Defendant did not act arbitrarily or capriciously in handling Plaintiffs claim.

Under sections 22:1892 & 22:1973, a plaintiff may recover statutory damages from a defendant insurer when (1) the insurer fails to pay the amount of any claim within sixty days after receipt of satisfactory proof of loss; and (2) that

failure is arbitrary, capricious, or without probable cause. Moreover, the insured bears the burden of proving that the insurer acted in bad faith. *See Reed v. State Farm Mut. Auto. Ins. Co.*, 857 So. 2d 1012, 1021 (La. 2003). However, when there is a serious dispute as to the nature of the loss, the insurer's refusal to pay the claim is not arbitrary, capricious, or without probable cause. *Kodrin v. State Farm Fire and Casualty Co.*, 2009 WL 614521, at *6 (5th Cir. 2009) (*citing Block v. St. Paul Fire & Marine Ins. Co.*, 742 So. 2d 746, 755 (La. App. 2d Cir. 1999). And "where the insurer has legitimate doubts about coverage, the insurer has the right to litigate these questionable claims without being subjected to damages and penalties." *Calogero v. Safeway Ins. Co. of La.*, 753 So. 2d 170, 173 (La. 2000).

The Court finds that there are no genuine issues of material fact. It is undisputed that Defendant timely responded to Plaintiffs' claim, sent numerous representatives and adjusters to Plaintiffs' home, and adjusted the claim and tendered payment (doc. 19, exs. C, D, E & F; doc. 24, p. 14). Except with regard to the dispute over the extent of damages to Plaintiffs' home, Defendant has at all times complied with its contractual obligations (doc. 19, ex. A). Moreover, Defendant made payments to Plaintiffs which approached the policy limit (doc. 19, ex. A).

The Court also finds that Defendant is entitled to prevail as a matter of law, because Plaintiffs have provided no evidence suggesting that Defendant acted arbitrarily and capriciously in handling Plaintiffs' claim, as is required under §

22:1973. *Ragas*, 136 F.3d at 458. At most, Defendant has engaged in a genuine dispute over the value of Plaintiffs damages, which it is entitled to do under Louisiana law. *Kodrin*, 2009 WL 614521, at *6; *Calogero*, 753 So. 2d at 173. Therefore, the Court will GRANT Defendant's (doc. 19) for Summary Judgment as to Plaintiffs' claim for statutory damages.

### V. Emotional Distress/Anguish Claim

Defendant asserts that a plaintiff in an insurance dispute may not recover emotional distress damages under Louisiana law (doc. 19). Plaintiffs, on the other hand, assert that a plaintiff in an insurance dispute may recover emotional distress damages, albeit, in narrow circumstances (doc. 24).

Louisiana Civil Code article 1998, which governs recovery for nonpecuniary losses arising from a breach of contract, requires that the parties' contract be intended to satisfy a nonpecuniary interest and that the defendant knew the contract was intended to satisfy such an interest. La. Civ. C. art. 1998. Moreover, the Louisiana Supreme Court has consistently held that insurance contracts, the object of which is the payment of money, are pecuniary in nature. *Sher v. Lafayette Ins. Co.*, 988 So. 2d 186, 202 (La. 2008) ("The common purpose of a commercial insurance contract is to provide for the protection of one of the contracting parties, the insured, from economic loss as a consequence of covered hazards—a commercial insurance policy is not designed to gratify nonpecuniary interests, it is meant to protect pecuniary interests."). Moreover,

even when emotional distress damages are available, the plaintiff bears the burden of establishing that the defendant *intended* to harm him. *Id.*

The Court finds that there are no genuine issues of material fact. The contract between Plaintiffs and Defendant was inarguably a contract for insurance (doc. 19, ex. A). Moreover, Plaintiffs have failed to produce any evidence suggesting that Defendant either knew of any nonpecuniary interest of Plaintiffs' or that Defendant intended to cause Plaintiffs the complained-of harm.

The Court also finds that Defendant is entitled to prevail as a matter of law. Generally speaking, plaintiffs may not recover emotional distress damages for the defendant's breach of an insurance contract. *Sher*, 988 So. 2d at 202. Moreover, because Plaintiffs have provided no evidence that any nonpecuniary interest existed, that Defendant knew of that interest, and that Defendant intended to harm Plaintiffs by thwarting the realization of that interest, summary judgment is proper. *Ragas*, 136 F.3d at 458. Therefore, the Court will GRANT Defendant's (doc. 19) for Summary Judgment as to Plaintiffs' emotional distress/anguish claim.

### VI. Wage Loss Claim

Defendant asserts that Plaintiffs may not recover lost wages because (1) lost wages are not covered by the policy; and (2) a plaintiff may only recover extra-contractual damages for bad faith breaches of contract, and it did not act in bad faith (doc. 19). Plaintiffs assert that whether their wage loss claim is a bad faith claim is a question of fact precluding summary judgment (doc. 24).

In order for a plaintiff to recover from a defendant for the defendant's alleged failure to fulfill a contractual obligation, the plaintiff must point to a specific provision within the parties' contract setting out the obligation. *Favrot*, 2011 WL 458708, at *7. To maintain a cause of action for extra-contractual damages, a plaintiff must establish that the defendant acted in bad faith. *Robin v. Allstate Ins. Co.*, 870 So. 2d 402, 408 (La. Ct. App. 3d 2004).

The Court finds that there are no genuine issues of material fact. Defendants had no contractual duty to provide Plaintiffs with lost wages (doc. 19, ex. A). Moreover, Plaintiffs have provided no evidence that Defendant acted arbitrarily and capriciously, or that Defendant's doing so caused Plaintiffs to lose wages. The Court also finds that, because Plaintiffs have failed to offer any evidence of bad faith, that Defendant is entitled to judgment as a matter of law. Therefore, the Court will GRANT Defendant's (doc. 19) for Summary Judgment as to Plaintiffs' lost wages claim.

## Conclusion

Accordingly, the Court hereby DENIES Defendant's Motion (doc. 19) for Summary Judgment, in part, on Plaintiffs' Dwelling claim. Additionally, the Court hereby GRANTS Defendant's Motion (doc. 19), in part, as to Plaintiffs' claims for damages to Personal Property, Additional Living Expenses, statutory damages, emotional distress/anguish damages, and lost wages.

Signed in Baton Rouge, LA this 3rd day of March, 2011.

HONORABLE JAMES. J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA